IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SONNIEL R. GIDARISINGH,

                Plaintiff,                OPINION AND ORDER

v.

                                                  12-cv-916-wmc

TRAVIS BITTELMAN, JASON
WITTERHOLT, BRIAN FRANSON,
and KELLY RICKEY,

                Defendants.

---

The court held a final pretrial conference on August 4, 2015, at which the parties were represented by counsel and plaintiff Sonniel R. Gidarisingh appeared via telephone. During the conference, the court made certain rulings on the record which are memorialized below. In addition, this order addresses three motions in limine on which the court either reserved ruling or stated that it would be open to reconsidering after reviewing additional, relevant decisions cited by the parties during the conference.

    I.    **Casiana's Investigation**

The court heard oral argument on plaintiff's motion in limine to exclude Officer Casiana's report of his investigation of June 23, 2012, incident. At the hearing, defendants argued that the statements of witnesses, in particular Madden's statement to Casiana, are admissible for impeachment purposes as prior inconsistent statements under Federal Rule of Evidence 613. To constitute a prior statement, however, a witness must either have made or adopted it. Here, Casiana wrote down the statement and defendants offer no evidence that a witness later adopted it. So, assuming a witness testifies that the

relevant portions of the investigation report do *not* reflect what he told Casiana, then those portions of the report do not constitute a "statement" by the witness under Rule 613. *See generally* 28 Charles Alan Wright & Victor J. Gold, *Federal Practice and Procedure* § 6203 at p.566 & n.9 (2nd ed. 2012) (Rule 613 applies only to evidence of a witness's *own* statement and not to evidence of another person's statement). On this issue, the Seventh Circuit's decision in *United States v. Schoenborn*, 4 F.3d 1424 (7th Cir. 1993), relied on by plaintiff, is directly on point. In considering whether an FBI agent's report purporting to contain what the witness told the agent would be admissible under Rule 613(b), the court concluded that the report was not admissible for purposes of impeachment because the FBI's "report did not constitute a statement made by Coleman." *Id.* at 1427-29 & n.3 (citing *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("[I]n the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words.")); *see also United States v. Adames*, 56 F.3d 737, 744 (7th Cir. 1995) (affirming district court's exclusion of FBI agent's report since witness "testified he did not adopt the statement, did not write it and could not say that what was in it was everything he had told the agents").

      This still leaves whether Casiana can *testify* to statements made by Madden and the other third-party witnesses during his investigation. Unlike Casiana's testimony about what plaintiff Gidarisingh told him, which is admissible under Federal Rule of Evidence 801(d)(2) as an admission by a party opponent, Casiana's testimony about what plaintiff's other witnesses told him does not fit within the non- hearsay exception

2

for a declarant-witness's prior statement because the witness's statement to Casiana was not "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). Still, Casiana's testimony could be offered to show an inconsistent statement, rather than to prove the truth of the matter asserted. If in response to a question from defendants' counsel, for example, Madden were to deny making the statement reported by Casiana, then that portion of Casiana's report is not admissible under Rule 613. However, defendants may then impeach Madden with Casiana's testimony as to what Madden told him during the investigation, not for the truth of the matter asserted but to impeach. If necessary, the court will provide a curative instruction, explaining to the jury that his testimony should only be considered in assessing Madden's credibility and not for the truth of what Madden purportedly told Casiana. Accordingly, plaintiff's motion to exclude evidence of Casiana's investigation will be GRANTED IN PART AND DENIED IN PART as reflected above.

## II. Gidarisingh's Medical Records

Plaintiff also sought reconsideration of the court's ruling as to the admissibility of a nurse's notations in his medical records that an officer reported Gidarisingh refused a medical appointment because it contains another layer of hearsay not covered by the medical diagnosis or treatment or regularly conducted activity exceptions under Rule 803(4) and (6), respectively. In support, plaintiff cites *Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993), in which the Second Circuit considered whether "the officer's statement to the nurse and the nurse's record of that statement are hearsay and can only be

admitted as exceptions to the hearsay rule." *Id.* at 108.  While the court reasoned that the nurse's business duty ensures the accuracy of her notes, "it is no guarantee at all of the accuracy of the information supplied by the officer." *Id.* (citing Fed. R. Evid. 803(6), advisory committee's note ("If, however, the supplier of the information does not act in the regular course, an essential link is broken.")).  As such, the court concluded that "[b]ecause the Progress Notes contain this additional level of hearsay, another link in the hearsay chain is necessary to usher into evidence the officer's statement to the nurse." *Id.* Not only is the issue here on all fours with that presented in *Romano*, the court finds the Second Circuit's reasoning persuasive.  Unlike the case where Gidarisingh is available to testify in response to a witness's denial of an attributed statement, the court also understands that "the officer" to whom Gidarisingh's statement was reportedly made cannot be identified, much less called to testify.  Without a basis to impeach Gidarisingh's anticipated denial that he made such a statement, there is also no basis to introduce the statement in cross-examination of the plaintiff in anticipation of later impeachment.  Accordingly, upon reconsideration, plaintiff's motion to exclude notes in or impeach based on Gidarisingh's medical record indicating that he refused scheduled medical appointments after the June 23, 2012, incident is GRANTED.

### III.    Julson's Disciplinary History

The court previously reserved on defendants' motion to exclude evidence and testimony about Julson's prior disciplinary history, pending review of a more legible copy of an allegedly racist email that served as the basis for his 2012 discipline.  Having now

4

reviewed a clearer copy submitted by defendants, the court agrees that there is ample reason to credit the conclusion reached by the disciplinary committee to discipline Julson for forwarding a racist email. However, the fact that Julson was disciplined for racist conduct is not enough to allow this disciplinary conduct into evidence here. In support of its admission, plaintiff points to Federal Rule of Evidence 608(b), which provides that the court "may on cross examination allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." However offensive the email string may be, it does not fit within the parameter of cases allowing specific instances of conduct to demonstrate untruthfulness. *Federal Practice and Procedure* § 6118 at nn.56-103 (citing examples of specific conduct ranging from insurance fraud, to lying on a tax return to faking the factual basis of an insanity defense); *see also Martin v. Jones*, No. 09 C 1690, 2013 WL 3754017, at * (N.D. Ill. July 16, 2013) (allowing introduction of witness's disciplinary conduct for making false statements but barring evidence of discipline for making racially derogatory remarks, finding such evidence would confuse the jury and prolong the trial unnecessarily).

At best, Julson's racist beliefs may be evidence of an underlying motive to lie, but that is too tangential to an assessment of his character for untruthfulness. Even if admissible for this limited purpose, the prejudicial impact of this conduct outweighs any probative value as to Julson's character for untruthfulness. *See United States v. Abair*, 746 F.3d 260, 263-64 (7th Cir. 2014) ("Because 'the possibilities of abuse are substantial,' however, the conduct must be sufficiently relevant to truthfulness before it can be the subject of cross-examination. Fed. R. Evid. 608(b) Advisory Committee Note for 1972.

What questions are allowed remains subject to the overriding protection of Rule 403." (quotation marks and citation omitted)). Accordingly, defendants' motion to exclude evidence of Julson's disciplinary conduct is GRANTED.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion in limine to exclude plaintiff's prior disciplinary history is GRANTED.

2) Plaintiff's motion to exclude Casiana's investigation report is GRANTED IN PART AND DENIED IN PART consistent with the above opinion.

3) Upon reconsideration, plaintiff's exclude notes in Gidarisingh's medical record indicating that he refused scheduled medical appointments after the June 23, 2012, incident is GRANTED.

4) Defendants' motion in limine to exclude any evidence regarding that fact that no contraband was found on Gidarisingh during the June 23, 2012, strip search is GRANTED, unless plaintiff makes a proper showing at sidebar that defendants have opened the door to such evidence.

5) Defendants' motion in limine to exclude the fact that Julson received a disciplinary action for forwarding a racist email is GRANTED.

6) By end of day Thursday, August 6, 2015, the parties shall file briefs on whether plaintiff alleged and was granted leave to proceed on (a) a First Amendment retaliation claim against defendant Bittelman premised on the alleged false conduct report; and (b) an excessive force claim (as distinct from a failure to protect claim) against defendant Franson.

7) Also by end of day Thursday, August, 6, 2015, defendants shall submit a brief describing their support for the position that the PLRA requires a showing of physical injury for compensatory damages for a conditions of confinement claim. Plaintiff's response is due by end of day Friday, August 7, 2015.

Entered this 6th day of August, 2015.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        WILLIAM M. CONLEY
                                        District Judge